IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| DAROLD L. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 07-1866-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

H. Peter Evans
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223

       Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia I. Hobbs
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

Stephanie R. Martz
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

    Plaintiff Darold Morgan brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

    The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

    The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Morgan had severe impairments of a back impairment and asthma and concluded that his mental impairment was not severe. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After considering the record, the ALJ concluded that Morgan had the residual

Page 4 - OPINION AND ORDER

functional capacity to lift 10 pounds frequently and 20 pounds occasionally; could sit, stand, or walk for one and one-half hours each at a time, with no overall limitations; was limited to occasional stooping, and was unable to work around concentrated exposure to dust, fumes, odors or gasses. Although Morgan could no longer perform any of his past jobs, the ALJ found that Morgan could work as a stock clerk and was thus not disabled under the Act.

## FACTS

Morgan was 45 years old on his alleged onset date of disability, January 1, 1999, and 49 years old on his date last insured, December 31, 2002. He alleges disability due to lumbar degenerative disc disease, a mood disorder, and asthma. Morgan has a high school education plus three years of college to receive an auto mechanic certificate along with specialist training. He has worked as a cashier/order clerk, auto salvage scrapper, auto mechanic, gas station attendant, and laborer.

Morgan complains of constant pain in his back, knees, shoulders, and chest, along with migraines. Although during the relevant time period, he performed all of the chores necessary to take care of his home and himself, Morgan states that he had to break some of the tasks up and return to them after he had rested. He generally was able to work for 30 minutes up to a couple of hours before taking a break, depending on the level of activity. Morgan testified that during the relevant time period, he could walk about two miles. In October 2001, Morgan described looking for work on a daily basis. Between 1999 and 2002, Morgan worked 10 hours a week doing auto mechanic work for friends, did the yard work and landscaping on his half acre lot, painted the house, and described himself as pretty active. He could lift 100 pounds without any aftereffects as long as he did so only once a day. In spite of the activity level, Morgan claimed

that he could not work a regular job at that time because he had to take more breaks than a healthy person. As of July 2004, well after his date last insured, Morgan complained of increasing fatigue which at that point was causing him to take a 30 minute nap a day.

The record contains evidence for the period after Morgan's date last insured of December 31, 2002. For example, Morgan completed an Activities of Daily Living and Socialization form in July 2004, and Douglas Paul Aman completed a Function Report Adult–Third Party form in August 2004, which both indicate that Morgan's functionality became more limited after his date last insured. Because this is a DIB case, however, evidence which only concerns Morgan's situation after his date last insured is not relevant.

## DISCUSSION

Morgan contends that the ALJ's step five findings are unsupported by the evidence because the residual functional capacity in the hypothetical presented to the vocational expert was defective for several reasons.

I.  Subjective Symptom Testimony

Morgan argues that the ALJ failed to provide clear and convincing reasons for rejecting his testimony on the severity of his symptoms.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of

the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id. Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ found that Morgan's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. The ALJ gave several reasons for his conclusion.

First, the ALJ considered Morgan's testimony at the hearing that he was only treated with ibuprofen for pain before his date last insured. Morgan argues that the ALJ should not rely on Morgan's faulty memory because the medical record indicates he was prescribed narcotics from 2001 through the end of 2002, in addition to attending a back stabilization class at the VA on October 1, 2002. According to Morgan, the VA doctors' use of significant pain medication, without any notations of pain exaggeration or malingering, supports his credibility.

The ALJ was incorrect to base his reasoning on the fact that prior to his date last insured, Morgan only used ibuprofen for pain relief. The VA treatment records clearly indicate that Morgan used narcotics consistently during the last few years of the time period at issue. Morgan's misstatement at the hearing does not change this fact. Thus, the use of over-the-counter pain relievers is a faulty reason.

Page 7 - OPINION AND ORDER

Next, the ALJ stated that Morgan was able to lead an active lifestyle despite his symptoms.

> In October 2001 he reported he spent his days working outside in the yard, doing mechanical work, running errands, and completing job applications. He reported he was able to sweep, mop, vacuum, do dishes, do laundry, shop, drive, perform minor house repairs, mow the yard, and cook. He has reported working at his dad's house, traveling to Arizona, unloading wood, and remodeling a 24-foot trailer.

Tr. 19.

The ALJ also noted Morgan's stepfather's report that in September 2001 Morgan looked for work daily, went fishing and camping, did household chores, gardening, home repairs, and car repairs but no longer went dancing. By June 2002 he continued to look for work and was trying to get schooling, cooked his meals, did laundry, and worked on the car but no longer went hiking, fishing, or camping.

Morgan notes that the ability to carry on some daily activities does not preclude a person from being disabled under the Act. He maintains that the ALJ failed to examine whether he performed the listed activities sporadically or interspersed them with rest periods to the extent that they remain consistent with his symptom testimony.

The ALJ accurately reflected the activities that Morgan performed during the relevant period. Although Morgan's VA treatment records are extensive, there is no indication that he only performed the listed activities sporadically. At the hearing, Morgan agreed that he could be characterized during the relevant time period as "pretty active." Tr. 1273. He also stated that during the time period, he could walk about two miles and lift one hundred pounds without back pain as long as he only lifted that much weight once a day. I agree with the ALJ that the

activities Morgan describes, even if performed somewhat sporadically, are inconsistent with the pain he describes. Although the activities might be a decrease from what Morgan enjoyed when he was healthier, they are still above the activity level of an average person, even one without impairments. Thus, Morgan's activity level was a valid reason to discredit his testimony.

The ALJ then noted that Morgan's last job ended in 1999 due to a business slow down, rather than due to his symptoms, and that in February 1999, which is after the alleged onset date, Morgan reported he was doing pretty well and in the process of changing careers.

This reason is supported by the record. I also note that Morgan continued to look for work after being laid off. This is a valid reason to discredit Morgan's testimony.

Morgan also raises the issue of his seizure disorder. The ALJ noted that two of Morgan's friends had completed seizure questionnaires but there was no evidence of a seizure disorder in the treatment record. Morgan contends that the ALJ overlooked evidence of a seizure disorder and notes medical records from 1983 indicating that Morgan had a seizure and was prescribed Dilantin.

In the seizure questionnaire Morgan personally completed on November 8, 2001, the only information he gave was that he had taken medication for seizures in the past. Morgan completed a second seizure questionnaire on July 12, 2002, in which he states that he takes no medication for seizures, that he feels totally wrung out after a seizure, and that he has had two seizures in the past three months.

I agree that the ALJ overlooked the VA treatment records concerning Morgan's seizure disorder, which began in 1984. Morgan was originally prescribed medication to treat the disorders. But it does not appear that he has sought any treatment for the disorder, taken any

medication for it, or even discussed it with his doctor, for years prior to the relevant time period. See Parra, 481 F.3d at 750-51 (evidence of conservative treatment, consisting of the use of over-the-counter pain medications, is sufficient to discount a claimant's testimony on the severity of an impairment). Most importantly for this discussion, however, I do not read the ALJ's opinion to take the misinformation he had on Morgan's seizure disorder as a factor undermining Morgan's credibility.

Therefore, the ALJ relied on one faulty reason and two well-supported reasons, which I conclude are specific, clear and convincing reasons for discrediting Morgan's subjective symptom testimony. The fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper. Batson, 359 F.3d at 1197.

In summary, I find that the ALJ committed no error when determining that Morgan's statements on the extent of his symptoms were not entirely credible.

II.     Determination of Residual Functional Capacity

    A.     Sustained Work Activity

Morgan claims that the ALJ failed to assess whether he could perform sustained work activities, as required by SSR 96-8p.

Residual functional capacity ("RFC") "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a day, five days a week, or the equivalent. SSR 96-8p. RFC is the most a person can do in spite of limitations or restrictions. Id. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and

restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." Id.

No doctor stated that Morgan could not work or that his pace would be slower than a person without his impairments. Any determination that Morgan could not sustain work-related activities throughout the work week must be based on Morgan's subjective symptom testimony. The ALJ properly discredited this testimony in a lengthy discussion. The ALJ's opinion, taken as a whole, comports with the requirements in SSR 96-8p for determining RFC.

B.   Nonsevere Impairments

Morgan next argues that the ALJ failed to incorporate his limitations caused by the nonsevere impairments of depression, tinnitus, and learning disabilities. He claims that the ALJ failed to fully and fairly develop the record concerning these limitations.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted).

The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005). The supplementation can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented. Tonapetyan, 242 F.3d at 1150.

Morgan notes that his tinnitus is bilateral, longstanding, constant, and causes some trouble concentrating and difficulty understanding speech when the environment is noisy. This characterization of the symptoms was documented in audiology testing in 2006.

The ALJ acknowledged Morgan's tinnitus diagnosis but noted that testing indicated good word recognition bilaterally and that there was no evidence of work-related functional limitations related to the tinnitus.

Morgan received a VA disability rating of 10% for service-connected tinnitus beginning in 1981. After re-evaluation, the VA continued the 10% rating for tinnitus in 2006, well after Morgan's date last insured. Tr. 334, 835. There is no evidence of any limitation caused by the tinnitus or any accommodation Morgan received for tinnitus during his long work history. Moreover, there is no ambiguous evidence or any basis on which to conclude that the ALJ failed to fully develop the record concerning Morgan's tinnitus. I conclude that the ALJ did not err concerning Morgan's nonsevere impairment of tinnitus.

Morgan notes that mental impairments often wax and wane, thus requiring the ALJ to consider all treatment records for his depression and not just the October 2001 psychological examination.

Dr. Joe Wood, a psychologist, examined Morgan on October 24, 2001. Morgan first told Dr. Wood that he was feeling pretty good on average but then rated his depression level at 10 out of 10, a characterization that Dr. Wood stated seemed to be an exaggeration. Dr. Wood assigned no psychological diagnosis to Morgan and stated that he had no mental limitations. Morgan was treated with antidepressants at times during the relevant time period but the treatment notes give no indication that he had mental limitations or that depression was a major point in any of his

Page 12 - OPINION AND ORDER

office visits. Morgan was enrolled in a Depression in Primary Care study at the VA after screening positive for post traumatic stress disorder and moderate depression symptoms indicating that he might meet the criteria for major depression and require treatment. The study consisted of three phone interviews with Morgan but no other treatment. Tr. 624, 631, 645, 657-58.

There is no indication of any limitations which the ALJ failed to include in Morgan's RFC concerning any depression he suffered at times. There is also no basis on which to conclude that the ALJ failed to fully develop the record on the issue.

Morgan next relies on the VA's assessment of his learning disability. The record contains a single reference to a learning disability. In November 2000, Morgan began working with the VA's vocational rehabilitation group to determine the feasibility for job placement. The Counseling Narrative states: "It is CERTAIN AND CONFIRMED that he has a learning disability, having life long trouble with spelling and writing, although he noted that he can speak well." Tr. 351. This assessment is balanced by Morgan's educational and employment success during his life. In spite of a learning disability, he graduated from high school and completed three years of college courses in auto mechanics, earning a certificate with two specializations. Furthermore, he worked most of his adult life. There is no indication Morgan's learning disability worsened over his life. I conclude that the ALJ did not err in failing to assign limitations flowing from Morgan's learning disability.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this      12th      day of February, 2009.


                                        /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge